LORI A. BOWMAN, CA Bar No. 114664
lori.bowman@ogletreedeakins.com
BETH A. GUNN, CA Bar No. 218889
beth.gunn@ogletreedeakins.com
JENNIFER L. KATZ, CA Bar No. 258917
jennifer.katz@ogletreedeakins.com
PATRICIA M. JENG, CA Bar No. 272262
patricia.jeng@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:   213.239.9800
Facsimile:    213.239.9045

Attorneys for Defendants
VICTORIA'S SECRET STORES, LLC
and L BRANDS, INC. (erroneously named and sued as
"LIMITED BRANDS")

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA CASAS, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA'S SECRET STORES, LLC, a business entity of unknown form, LIMITED BRANDS, a business entity of unknown form, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:14-CV-6412<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>District Judge:<br>Magistrate Judge:<br>Courtroom:<br><br>Complaint Filed: July 9, 2014<br>Trial Date: |

18637391_2.docx

Case No. 2:14-CV-6412

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

# TABLE OF CONTENTS

**Page**

I. THE STATE COURT ACTION ................................................................ 1

II. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ........................................................................................................... 2

    A. The Size of the Putative Class Exceeds 100. ................................. 3

    B. The Parties Are Diverse. ................................................................. 4

    C. Amount in Controversy Exceeds an Aggregate of $5,000,000.00. ................................................................................... 6

        1. Defendant's Estimate of the Amount in Controversy .................................................................................. 8

            a) The Estimated Amount in Controversy for Plaintiff's Claims for Failure to Pay Reporting Time Pay for Call-In Shifts. ................... 10

            b) Estimated Amount in Controversy for Waiting Time Penalties Based on Alleged Failure to Pay Reporting Time Pay for Call-In Shifts. ......................................................................... 11

            c) Estimated Amount in Controversy for Failure to Provide Accurate Wage Statements .................... 12

            d) Amount in Controversy for Attorneys' Fees Sought. ................................................................................. 13

            e) Summary of VSS's Calculations. ............................ 14

III. VSS HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS. ............................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Altamirano v. Shaw Indus., Inc.*
C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) ....................... 6

*Borden v. Blue Cross & Blue Shield of W. New York*
418 F. Supp. 2d 266 (W.D.N.Y. 2006) ............................................................. 3

*Cagle v. C & S Wholesale Grocers, Inc.*
No. 2:13-CV-02134-MCE, 2014 WL 651923 (E.D. Cal. Feb. 19, 2014) ............ 7

*Ford v. New United Motors Mfg., Inc.*
857 F. Supp. 707 (N.D. Cal. 1994) ................................................................... 3

*Galt G/S v. JSS Scandinavia*
142 F.3d 1150 (9th Cir. 1998) .......................................................................... 7

*Guglielmino v. McKee Foods Corp.*
506 F.3d 696 (9th Cir. 2007) .................................................................. 6, 7, 13

*Handelsman v. Bedford Village Assocs., Ltd. Partnership*
213 F.3d 48 (2d Cir. 2000) ............................................................................... 4

*Jasso v. Money Mart Express, Inc.*,
No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ............ 8, 14

*Johnson v. Columbia Props. Anchorage, LP*
437 F.3d 894 (9th Cir. 2006) ............................................................................ 4

*Kanter v. Warner-Lambert Co.*
265 F.3d 853 (9th Cir. 2001) ............................................................................ 4

*Kantor v. Wellesley Galleries, Ltd.*
704 F.2d 1088 (9th Cir. 1983) .......................................................................... 4

*Lew v. Moss*
797 F.2d 747 (9th Cir. 1986) ............................................................................ 4

*McCabe v. General Foods Corp.*
811 F.2d 1336 (9th Cir. 1987) .......................................................................... 6

*Muniz v. Pilot Travel Ctrs. LLC*
No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1,
2007) ........................................................................................................ 6, 7, 14

*Rodriguez v. AT&T Mobility Servs. LLC*
728 F.3d 975 (9th Cir. 2013) ............................................................................ 6

*Sanchez v. Wal-Mart Stores, Inc.*
No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706 (E.D. Cal. May 8,
2007) ............................................................................................................ 7, 13

*Sherman v. A.J. Pegno Constr. Corp.*
    528 F. Supp. 2d 320 (S.D.N.Y. 2007) ................................................................. 2

*State Farm Mut. Automobile Ins. Co. v. Dyer*
    19 F.3d 514 (10th Cir.1994) ............................................................................... 4

*Strotek Corp. v. Air Transport Ass'n of America*
    300 F.3d 1129 (9th Cir. 2002) ............................................................................ 5

*The Hertz Corporation v. Friend*
    130 S.Ct. 1181 (2010) ......................................................................................... 5

**FEDERAL STATUTES**

28 U.S.C. § 1332 ................................................................................................. 2, 5

28 U.S.C. § 1441 ............................................................................................ 2, 6, 15

28 U.S.C. § 1446 ...................................................................................................... 2

**CALIFORNIA STATUTES**

Cal. Civ. Proc. Code § 340 ..................................................................................... 12

Cal. Labor Code § 203 ............................................................................................ 10

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant VICTORIA'S SECRET STORES, LLC ("VSS" or "Defendant") remove this action from the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and on the following grounds:

**I.    THE STATE COURT ACTION**

1.    On or about July 9, 2014, Plaintiff MAYRA CASAS ("Plaintiff"), individually and on behalf of all others similarly situated, filed a Civil Complaint ("Complaint") in the Superior Court of the State of California, County of Los Angeles, entitled *Mayra Casas, an individual, on behalf of herself and all others similarly situated, Plaintiff, v. Victoria's Secret Stores, LLC, a business entity of unknown form, Limited Brands, a business entity of unknown form, and DOES 1 through 100, inclusive, Defendants*, which was assigned the case number BC550973, in the Superior Court of Los Angeles ("State Court Action").  The Complaint asserts the following claims for relief against Defendant: (1) Failure to Pay Reporting Time on Regularly Scheduled Shifts; (2) Failure to Pay Reporting Time on "Call-In" Shifts; (3) Failure to Pay for All Time Worked; (4) Failure to Maintain Required Business Records; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Unfair Business Practices; and (7) Civil Penalties under the Private Attorney General Act.

2.    On July 15, 2014, VSS received via its registered agent for service of process a copy of the Summons and Complaint in this action, as well as the Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location, Notice of Case Assignment – Class Action Cases, and accompanying Stipulation forms.  (*See* Declaration of Denise Slazyk in support of Defendant's Notice of

Removal ("Slazyk Decl."), ¶ 9, Ex. A.)  True and correct copies of Summons and Complaint, as well as of all process, pleadings, and orders served upon Defendant in the current State Court Action, are attached as **Exhibit A** to this Notice of Removal.  (*Id.*)

3. L Brands[1] has not been served with the Complaint in the State Court Action.  (Slazyk Decl., ¶ 10.)

4. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint.

5. <u>This Notice is Timely</u>.  This Notice of Removal is timely filed within 30 days of service of the Summons and Complaint upon VSS.

## II.  JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

6. This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, in that the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.00.  Pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d), 1453, 1711-1715), federal district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated controversy exceeds $5 million.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

7. VSS is the only named and served defendant in this action, and thus, the consent of any other defendants is inapplicable.  Moreover, this action may be removed solely by VSS without the consent of the other defendants pursuant to CAFA, 28 U.S.C. Section 1453(a).  *See* 28 U.S.C. §§ 1441, 1446; *Sherman v. A.J.*

---

[1] Plaintiff erroneously names Limited Brands as a Defendant.  However, effective March 22, 2013, the company's name changed from "Limited Brands, Inc." to "L Brands, Inc."  (*See* Slazyk Decl. ¶ 8.)  Thus, there is currently no entity known as Limited Brands, Inc. or Limited Brands.  (*Id.*)

1  *Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) (although the
2  general agreement is that "defendants must join in seeking removal…there are
3  exceptions to this rule for defendants who have not been served, unknown
4  defendants, and fraudulently joined defendants"); *Borden v. Blue Cross & Blue
5  Shield of W. New York*, 418 F. Supp. 2d 266, 270 (W.D.N.Y. 2006) (The "rule of
6  unanimity" is excused where the non-joining defendants have not been served with
7  service of process at the time the removal petition is filed).

8.   L Brands, whose consent is not required, nevertheless does not object to removal of this action to the United States District Court for the Central District of California (*See* Slazyk Decl. ¶ 10.)  *See Ford v. New United Motors Mfg., Inc.*, 857 F. Supp. 707, 708, fn. 3 (N.D. Cal. 1994)..

**A.**   **The Size of the Putative Class Exceeds 100.**

9.   Plaintiff's Complaint defines the class as consisting of the following:

> All individuals employed by Defendants, at Victoria's Secret Stores in California, during the Class Period, who Defendants classified as "non-exempt" from overtime pay.
>
> As used herein, the term, "Class Period," means the time frame commencing four years prior to the date the original complaint in this action was filed and continuing until the time that judgment is entered in this case.

(Compl., ¶ 21.)  Excluded from the Class are "Defendants, their owners, directors, officers, executives, and all management personnel whose "responsibility it was to maintain and/or enforce the policies, procedures, customs and/or business practices…." (*Id.*)

10.   The Complaint also defines a Separated Employee Subclass ("Subclass") as: "All members of the foregoing Class whose employment with Defendants terminated during the Class Period."  (*Id.*)

11.   VSS's employment records show that the number of non-exempt employees who were and/or are employed at Victoria's Secret Stores in California, who are classified as non-exempt, non-managerial employees in California from

July 9, 2010 to August 14, 2014 is **28,253** ("putative class members").  (*See* Declaration of Beth Gunn ("Gunn Decl.", ¶¶ 10,11).

### B. The Parties Are Diverse.

12. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

13. <u>Citizenship of Plaintiff and putative class members</u>.  Putative class members, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California.  *See, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).  The Complaint alleges that Plaintiff resides in La Puente, in the State of California. (Compl., ¶ 9.)  VSS's records indicate that 97.58 % of the putative class members in this case have last-known addresses within California.  (Gunn Decl., ¶ 25).  Evidence of residence in a state creates a presumption that individuals are domiciled in the state.  *See State Farm Mut. Automobile Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir.1994) ("a party's place of residence is *prima facie* evidence of domicile"); *Lew*, 797 F.2d at 751 (finding that evidence of plaintiff's residency in the state alleged as his domicile created a presumption that plaintiff was domiciled in the state).

14. <u>Citizenship of Defendants</u>.  At all times on or after the date this action was filed, Defendants have been citizens of the State of Delaware and the State of Ohio.  The Ninth Circuit treats limited liability companies like partnerships for purposes of diversity jurisdiction.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (applying the standard used by sister circuits and treating LLCs like partnerships).  Thus, "an LLC is a citizen of every state of which its owners/members are citizens." *Id.*; *see also Handelsman v. Bedford Village*

1  *Assocs., Ltd. Partnership*, 213 F.3d 48, 51–52 (2d Cir. 2000) (recognizing that a
2  limited liability company has the citizenship of its members).

3      15.    VSS is a limited liability company organized under the laws of
4  Delaware, with its principal place of business in Reynoldsburg, Ohio, as that is the
5  location of its headquarters from which its officers direct, coordinate, and control its
6  business operations. (Slazyk Decl., ¶ 2.) VSS is wholly-owned by its sole member,
7  Retail Store Operations, Inc., which is a Delaware corporation with its principal
8  place of business in Columbus, Ohio. (*Id.* at ¶ 3.) Retail Store Operations, Inc. is a
9  wholly-owned subsidiary of Intimate Brands Holding, LLC, which is a Delaware
10 limited liability company with its principal place of business in Columbus, Ohio.
11 (*Id*. at ¶ 4.) Intimate Brands Holdings, LLC is wholly-owned by its sole member,
12 Intimate Brands, Inc., which is a Delaware corporation with its principal place of
13 business in Columbus, Ohio. (*Id.* at ¶¶ 4, 5.) Intimate Brands, Inc. is a wholly-
14 owned subsidiary of L Brands, Inc., which is incorporated in Delaware with its
15 principal place of business in Columbus, Ohio. (*Id.* at ¶¶ 4, 5.) The activities of L
16 Brands, Inc. are directed, coordinated, and controlled by its officers from its
17 headquarters in Ohio. (*Id.* at ¶ 6.) L Brands, Inc. is neither incorporated in
18 California, nor does it have a principal place of business in California.  (*Id.*)

19     16.    (Pursuant to 28 United States Code § 1332(c), "a corporation shall be
20 deemed to be a citizen of any State by which it has been incorporated and of the
21 State where it has its principal place of business." The United States Supreme Court
22 established the proper test for determining a corporation's principal place of business
23 for purposes of diversity jurisdiction in *The Hertz Corporation v. Friend*, 130 S.Ct.
24 1181 (2010). The Supreme Court concluded that the "'principal place of business' is
25 best read as referring to the place where a corporation's officers direct, control, and
26 coordinate the corporation's activities." *Id*. at 1184. The Court further clarified that
27 the principal place of business is the place where the corporation "maintains its
28 headquarters – provided that the headquarters is the actual center of direction,

control, and coordination." *Id*.

17. For purposes of removal, diversity of citizenship is determined at the time the action is filed and at the time of removal. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002).

18. L Brands' and VSS's activities are directed, coordinated, and controlled by its officers from its headquarters in Ohio. (Slazyk Decl., ¶¶ 2, 6.) Neither L Brands nor VSS is incorporated in California nor do they have a principal place of business in California.

19. Accordingly, for purposes of determining diversity, Defendants are regarded as citizens of Delaware and Ohio, and not citizens of California.

20. <u>Citizenship of Doe Defendants.</u> The citizenship of fictitiously-named "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met.

### C. **Amount in Controversy Exceeds an Aggregate of $5,000,000.00.**

21. Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

22. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class

1 action meets the [amount in controversy] requirements" adding "the potential claims
2 of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing
3 *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013));
4 *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007).
5 Furthermore, "[i]n considering whether the amount in controversy is clear from the
6 face of the complaint, a court must assume that the allegations of the complaint are
7 true and that a jury will return a verdict for the plaintiff on all claims made in the
8 complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600,
9 at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F.
10 Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

11      23.     Any calculation of the "aggregate amount in controversy" for purposes
12 of CAFA may properly include all potential damages recoverable by the plaintiffs
13 based on the claims asserted in the complaint. *Muniz*, 2007 WL 1302504, at *3.
14 Such calculations should also include attorneys' fees to the extent the plaintiff seeks
15 to recover them in the complaint. *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d
16 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an
17 award of attorneys' fees, either with mandatory or discretionary language, such fees
18 may be included in the amount in controversy."); *Cagle v. C & S Wholesale Grocers,*
19 *Inc.*, No. 2:13-CV-02134-MCE, 2014 WL 651923, at *10 (E.D. Cal. Feb. 19, 2014)
20 (declaring that "attorney's fees may also be considered in determining the amount in
21 controversy if such fees are recoverable by plaintiff, either by statute or by
22 contract"); *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM,
23 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (holding that, in a CAFA action,
24 attorneys' fees are part of the amount in controversy calculation).

25      24.     While Defendant denies the validity of Plaintiff's claims and requests
26 for relief, and does not concede in any way that the allegations in the Complaint are
27 accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff
28 or the purported class are entitled to any of the requested relief, the allegations in the

Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700 (citing *Abrego Abrego and Sanchez v. Monumental Life Ins. Co.*,102 F.3d 398 (9th Cir.1996)).

25. As described further below, as well as in the concurrently filed declarations from VSS and its counsel[2], the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### 1. **Defendant's Estimate of the Amount in Controversy**

26. In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a very conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged (1) unpaid wages resulting from the alleged failure to pay reporting time pay for scheduled Call-In Shifts; (2) waiting time penalties resulting from alleged unpaid reporting time pay to those who worked Call-In Shifts during the three years prior to the filing of the Complaint; (3) civil penalties resulting from wage statements that allegedly did not accurately contain the reporting time pay allegedly due as a result of being scheduled for Call-In Shifts; and (4) attorneys' fees based on these amounts. Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses

---

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. See, e.g., *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods {sic} and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

for estimates of the amounts placed in controversy for Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) failure to pay alleged reporting time pay due based on regularly scheduled shifts; (2) civil penalties associated with this alleged failure; (3) failure to pay for alleged off-the-clock work; (4) failure to keep required records; (5) additional civil penalties based on allegedly inaccurate wage statements for reasons other than failure to pay reporting time pay for Call-In Shifts; (6) penalties sought pursuant to the Private Attorneys General Act; and (7) attorneys' fees associated with these other allegations.  If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.  In the event that this Court has any question regarding the propriety of this Notice of Removal at any time during this action, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal, including the analysis estimating the amounts in controversy not currently included in this Notice of Removal.

27.     The amount in controversy in this matter as a result of the claims alleged in Plaintiff's putative class action Complaint includes, but is not limited to:

| Claim | Amount in Controversy |
|---|---|
| Failure to Pay Reporting Time on Call-in Shifts [Reporting Time Pay] | $25,138,220.41 |
| Failure to Pay Reporting Time on Call-In Shifts [Civil Penalties] | $ 4,191,999.60 |
| Failure to Provide Accurate Itemized Wage Statements [Based Only on Failure to Pay Reporting Time Pay for Call-In Shifts] | $   460,800.00 |
| Attorneys' Fees | $ 7,447,755.00 |
| **TOTAL** | $ 37,238,775.01 |

(*See* Gunn Decl., ¶¶ 12-24.)

### a) The Estimated Amount in Controversy for Plaintiff's Claims for Failure to Pay Reporting Time Pay for Call-In Shifts.

28. In Plaintiff's Second Cause of Action, Plaintiff alleges that Defendants failed to pay Reporting Time Pay under Labor Code section 558 and 8 C.C.R. section 11070(5) for Plaintiff and the putative class members' Call-In Shifts. Specifically, the Complaint alleges that employees are "entitled to Reporting Time Pay…in an amount equal to half of the scheduled [Call-In Shift] ***but in no event less than two hours***..." (Compl., ¶ 42.) (emphasis added). The Complaint further alleges that "employees, in fact, are reporting for work ***each and every time that they call in*** to their manager or supervisor." (Compl., ¶ 41.) (emphasis added).

29. Hours of Reporting Time Pay For Call-In Shifts. Based on Plaintiff's allegation that for each and every Call-In Shift, putative class members are entitled to "in no event less than two hours" of Reporting Time Pay, VSS conservatively applied the two (2) hour minimum to its analysis of the amount in controversy for Reporting Time Pay.

30. Putative Class Members Scheduled for Call-In Shifts. Based on VSS's records, between July 9, 2010 and August 4, 2014, **12,152** putative class members were scheduled to work Call-In Shifts in the class period.

31. Reporting Time Pay For Call-In Shifts. Because Plaintiff alleges that reporting time pay is owed for each and every one of these Call-In Shifts, VSS based its estimate of the amount in controversy for this claim on the number of scheduled Call-In Shifts during the relevant period multiplied by the putative class member's actual hourly rate, for two hours per instance. Using this calculation, a conservative estimate of the amount in controversy for the amounts Plaintiff seeks as unpaid reporting time pay for Call-In Shifts as alleged in the Complaint is **$25,138,220.41**.

### b) Estimated Amount in Controversy for Waiting Time Penalties Based on Alleged Failure to Pay Reporting Time Pay for Call-In Shifts.

32. Plaintiff alleges that Defendant "fail[ed] to pay all earned wages at the time the employees separate from the Defendants' employ." (Compl., ¶ 7.) Plaintiff defines the "Separated Employee Subclass" as "[a]ll members of the foregoing Class whose employment with Defendants terminated during the Class Period," and places in controversy the question of "whether Defendants failed to pay all earned wages at the time of termination of employment of those included in the Separated Employee SubClass." (Compl., ¶¶ 21, 24g.)

33. Labor Code Section 203 provides, in pertinent part:

> "if an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

34. To estimate the amount in controversy for waiting time penalties, VSS relies on a putative "Separated Employee Subclass" that includes only those putative class members who (1) were terminated prior to July 15, 2014 (more than 30 days prior to the date of removal); and (2) were scheduled for at least one Call-In Shift during the relevant period.

35. <u>Separated Employee Subclass</u>. Based on VSS's records, the total number of VSS employees who have been terminated in the class period is **23,340**. (Gunn Decl., ¶ 17.) However, the more conservative number of members relied upon in this Notice of Removal includes only the Separated Employee Subclass members who allegedly were not paid reporting time pay for Call-In Shifts during the three year statute of limitations, which is **7,718**. (*Id.*) This number also includes only employees who were terminated at least 30 days prior to the date of this removal. (Gunn Decl., ¶¶ 15-19.) Thus, even if the putative class member had only *one* Call-In Shift on the very last day of employment (for which that employee was

allegedly not paid), she or he would be entitled to the maximum thirty (30) days waiting time penalties.

36.     <u>Penalty Rate</u>.  Because all putative class members, including the Separated Employee Subclass, were typically scheduled to work shifts of at least two (2) hours or longer, VSS calculated each of the putative Separated Employee Subclass members' potential waiting time penalty rate by multiplying each of their actual rates of pay by two (2), resulting in each members' *daily* penalty rate.

37.     <u>Waiting Time Penalties for 30 days</u>.  Because each of the putative Separated Employee Subclass members accounted for in the amount in controversy for waiting time penalties has been terminated for at least 30 days at the time of removal, the estimated amount in controversy based on thirty days' worth of potentially available penalties, and the calculations listed above, is **$4,191,999.60**. (Gunn Decl., ¶ 19.)

c)     **<u>Estimated Amount in Controversy for Failure to Provide Accurate Wage Statements</u>**

38.     Plaintiff also alleges that Defendants failed to provide accurate itemized wage statements.  (Compl., ¶ 60.)  Plaintiff predicates this claim in part on wage statements that did not accurately reflect allegedly owed but unpaid reporting time pay.  (*Id*.)  Plaintiff alleges that based on these and other allegations in the Complaint, Plaintiff and putative class members are entitled to recover statutory penalties, under Labor Code Section 226(e), "the greater of their actual damages or fifty dollars ($50) for the initial violation of Labor Code Section 226(a) and one hundred dollars ($100) for each subsequent violation, up to a maximum of $4,000 per Class member or the then applicable legal rates at the time of adjudication, plus their reasonable attorneys' fees and costs."

39.     Notwithstanding Plaintiff's class period definition, the statute of limitations for a claim for statutory penalties under Section 226(e) is one year.  *See* Cal. Civ. Proc. Code § 340(a).

40. <u>Inaccurate Wage Statements.</u>  Although putative class members would presumably be entitled to penalties for each wage statement covering a pay period wherein they were scheduled for at least one Call-In Shift, VSS relies conservatively only on the *initial violation*, *i.e.*, an assessment of penalties based on one allegedly inaccurate wage statement for each putative class member who was scheduled for at least one Call-In Shift during the time frame of July 9, 2013 to August 4, 2014, even if that putative class member had additional Call-In Shifts scheduled in that time period.  (Gunn Decl., ¶ 21.)  This is an extremely conservative calculation of the amount in controversy because (1) it only considers potentially inaccurate wage statements based on the alleged failure to pay reporting time pay for scheduled Call-In Shifts, and does not include additional amounts presumably also sought as a result of allegedly inaccurate wage statements resulting from alleged unpaid reporting time pay [as set forth in the first cause of action] or alleged off-the-clock time and wages earned while "waiting for the store to open or after close of the store" (*see* Compl., ¶ 60); and (2) it does not include additional amounts sought as penalties to which each of the putative class members would be entitled if they had Call-In Shifts scheduled in multiple pay periods.

41. VSS's counsel has therefore analyzed VSS's records for the purpose of calculating the amount in controversy for wage statement penalties, utilizing a one-year statute of limitations, and assessing one penalty in the amount of $50 for each putative class member that was scheduled for a Call-In Shift within the applicable period. Using this analysis, VSS has reasonably determined that the amount in controversy as penalties pursuant to Section 226 is at least **$460,800.00**

          **d)**     **Amount in Controversy for Attorneys' Fees Sought.**

42. In the Complaint, Plaintiff seeks to recover attorneys' fees – including based on the aggregate amounts in controversy for alleged unpaid reporting time pay for Call-In Shifts, failure to provide accurate wage statements, and waiting time penalties as described above. (*See* Compl., ¶¶ 63.)  Although VSS's estimates of the

amount in controversy, as described above, without more, satisfy CAFA's jurisdictional minimum amount in controversy, VSS may also rely on a realistic estimate for attorneys' fees as alleged in the Complaint. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (finding that CAFA's "amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees"); *Sanchez*, 2007 WL 1345706, at *2 (noting that "[a]ttorney's fees, if authorized by statute or contract, are also part of the [amount in controversy] calculation"). Here, a realistic estimate of Plaintiff's attorneys' fees is 25 percent of the total recovery. *See Muniz*, 2007 WL 1302504, at *4 n.8 (noting that, "in California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement"); *see also Jasso*, 2012 WL 699465, at *7 (noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). In addition, recent class action settlements reached by VSS's counsel in federal court have garnered at least 25 percent of the total damages awarded to the class as attorneys' fees. (*See* Gunn Decl., ¶ 22 & Ex. B.)

43. Based on the above, VSS calculates the amount in controversy as attorneys' fees as at least **$7,447,755.00**. (*See* Gunn Decl., ¶ 23.)

### e) Summary of VSS's Calculations.

44. As described above, as well as more thoroughly detailed in the concurrently-filed Gunn Declaration, a reasonable and conservative estimate of the total amount in controversy, based on each of the categories listed above, is at least **$ 37,238,775.01**. (*See* Gunn Decl., ¶ 24.) Although VSS specifically denies Plaintiff's claims and denies that Plaintiff or putative class members will recover any of the relief they seek, it is clear from the scope of the relief sought that the amount in controversy arising from the allegations in the Complaint in this action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III. VSS HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS.

45. <u>Venue is Proper</u>.  The Superior Court of California, Los Angeles County, is located within the Central District of California, Western Division.  Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because the Central District of California, Western Division, is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

46. As further required by 28 U.S.C. § 1446(a), VSS hereby provides this Court with copies of all process, pleadings, and orders served on VSS in this action.  (*See* Ex. A.)  VSS has not been served with any pleadings, process, or orders besides those attached.  (*Id.*)

47. In accordance with 28 U.S.C. § 1446(d), VSS will promptly give written notice to Plaintiff of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of Los Angeles.  Further, in accordance with Federal Rule of Civil Procedure 7.1 and Central District of California Local Rule 7.1-1, respectively, VSS concurrently files its Disclosure Statement and Notice of Interested Parties, and, in accordance with Local Rules 83-1.3.1 and 83-1.4.1, VSS concurrently files its Notice of Related Case(s) and Notice of Pendency of Other Actions or Proceedings.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

48. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, VSS requests that the Court issue an Order to Show Cause so that VSS may have an opportunity to more fully brief the basis for this removal.

DATED: August 14, 2014

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Beth A. Gunn
Lori A. Bowman
Beth A. Gunn
Jennifer L. Katz
Patricia M. Jeng

Attorneys for Defendants
VICTORIA'S SECRET STORES, LLC and L BRANDS, INC. (erroneously named and sued as "LIMITED BRANDS")