# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-6412-GW(VBKx) | Date | December 1, 2014 |
| Title | Mayra Casas v. Victoria's Secret Stores, LLC, et al. | | |

**Present: The Honorable** GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

David Leimbach  Beth A. Gunn

**PROCEEDINGS:** DEFENDANT VICTORIA SECRET STORES, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [20]

The Court's Tentative Ruling following Supplemental Briefing is circulated and attached hereto. Court hears further oral argument. For reasons stated on the record, Defendant's Motion is continued to December 18, 2014 at 8:30 a.m. Parties will file a joint scheduling report re class certification by noon on December 15, 2014. Court will issue its ruling on Defendant's Motion by no later than December 10, 2014.

: 30

Initials of Preparer   JG

<u>*Mayra Casas, et al. v. Victoria's Secret Stores, LLC, et al.*</u>; Case No. CV-14-6412-GW(VBKx)
Tentative Ruling following Supplemental Briefing on Motion to Dismiss FAC

I. <u>Background</u>

Wage Order 7-2001 provides that an employee is entitled to "waiting-time pay" when he or she "is required to report for work and does report," but is furnished less than half of the usual or scheduled day's work. Cal. Code Regs., tit. 8, § 11070(5)(A). In their First Amended Complaint ("FAC"), Mayra Casas and Julio Fernandez ("Plaintiffs") claim that they (and other Victoria's Secret employees) are entitled to waiting-time pay for so-called "call-in shifts," which the FAC describes as follows:

> Whenever a "Call-in" shift appears on an employee's schedule, the worker is required to call his or her manager or supervisor two hours in advance of the "Call-in" shift, to determine if he or she needs to report to work for the hours encompassed by the "Call-in" shift.

> Plaintiffs . . . have been instructed by Defendants to treat the "Call-in" shifts as actual, scheduled work time. Defendants have told Plaintiffs . . . that failure to call the manager or supervisor in advance of the shift, as well as failing to appear and work the shift, or showing up late for the shift, is treated as tardiness and/or absence, just as with a regular shift, and subject to discipline just the same as a regular shift.

Docket No. 17, FAC ¶¶ 46-47. According to Plaintiffs:

> Because the Defendants treat "Call-in" shifts the same as regular shifts for all intents and purposes, and because of the employer discipline administered whenever workers fail to call in and/or fail to work all or part of such a shift, the employees subject to this [call-in] policy . . . may not make personal plans or use their time as they choose on those dates and times when they have been scheduled for a "Call-in" shift.

> In reality, the employees subject to the "Call-in" schedule are on standby and must be ready and able to report to work on the dates and times indicated in the schedule. Plaintiffs . . . have not been and are not provided with "standby" pay for these shifts. Because the Defendants treat the shift as a regular shift, the employees, in fact, are reporting for work each and every time that they call in to their [manager/supervisor].

> Because Defendants deem the "Call-in" shifts to be regular shifts, Plaintiffs. . . are entitled to Reporting Time Pay . . . on each occasion when the employees call in but are not furnished with work for the scheduled time.

*Id.* ¶¶ 50-52. In short, Plaintiffs allege that they should receive reporting-time pay when they (1) are scheduled for a call-in shift, (2) call two hours in advance, and (3) are told not to come to the store.

Defendant Victoria's Secret Stores ("VSS") previously moved to dismiss this claim, arguing that Plaintiffs' call-in theory was not cognizable as a matter of law. *E.g.,* Docket No. 20-1 at 8:23-14:16. But because neither party fully addressed what the Wage Order means by "report to work," or whether someone "reports to work" by calling in for a call-in shift, the Court sought supplemental briefing on the issue. Docket No. 25 at 6-7. Having reviewed that supplemental briefing, the Court would find that call-in shifts do not trigger reporting-time penalties, even if the scheduling practice is inconvenient and employee-unfriendly. The Court would therefore DISMISS Plaintiffs' second cause of action – for failure to make reporting-time payments for call-in shifts – WITH PREJUDICE.

## II. Analysis

"As quasi-legislative regulations, the wage orders are to be construed in accordance with the ordinary principles of statutory interpretation." *Bright v. 99cents Only Stores*, 189 Cal.App.4th 1472, 1480 (2010) (citations and quotations omitted).[1] According to the California Supreme Court, the "fundamental task in construing a statute is to ascertain the intent of the [drafters] so as to effectuate the purpose of the statute." *Day v. City of Fontana*, 25 Cal.4th 268, 272 (2001) (citations omitted). "In this search for what the [drafters] meant, the statutory language itself is the most reliable indicator, so [courts] start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context." *Martinez v. Combs*, 49 Cal.4th 35, 51 (2010) (citations and quotations omitted, punctuation altered). "If the words themselves are not ambiguous, [courts] presume the [drafters] meant what [they] said, and the statute's plain meaning governs." *Wells v. One2One Learning Found.*, 39 Cal.4th 1164, 1190 (2006). Conversely, if the statutory language is susceptible to more than one reasonable interpretation, courts may consider legislative history and established rules of construction. *Mejia v. Reed*, 31 Cal.4th 657, 663 (2003). In certain cases, courts may also consider "the consequences of a particular interpretation, including its impact on public policy." *Wells*, 39 Cal.4th at 1190. Generally, wage orders governing the conditions of employment are construed broadly to effectuate their protective purpose. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1103 (2007); *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1027 (2012).

### A. *Plain Meaning*

As relevant here, Wage Order 7-2001 states:

> Each workday an employee *is required to report for work and does report*, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

---

[1] "The [IWC] is the state agency empowered to formulate wage orders governing employment in California. The Legislature defunded the IWC in 2004, however its wage orders remain in effect." *Murphy*, 40 Cal.4th at 1102 & n.2 (citations omitted). The Department of Labor Standards Enforcement ("DLSE") "is the state agency empowered to enforce California's labor laws, including IWC wage orders." *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 581 (2000) (citations and quotations omitted). Although not binding, the DLSE's interpretation of wage orders is entitled to some "consideration and respect." *Murphy*, 40 Cal.4th at 1105 & n.7.

Cal. Code Regs., tit. 8, § 11070(5)(A). In other words, an employee is entitled to reporting-time pay for at least two hours of work where he or she is "required to report to work and does report," but is furnished less than half of his or her usual or scheduled day's work.

Plaintiffs assert that the plain meaning of "report" means "to present one's self . . . as ready to do something." *See* Docket No. 26 at 2:28-3:2. According to Plaintiffs:

> [W]hen employees call in immediately[2] prior to a scheduled shift, they are presenting themselves as ready to work the shift. Applying the plain meaning of "report," therefore, demonstrates Defendants' call-in policy requires employees to "report for work."

Docket No. 26 at 3:2-5.

VSS agrees with Plaintiffs that "report" means to "to present one's self . . . as ready to do something." Docket No. 29 at 2:11-19. But VSS argues that "presenting" oneself as "ready" means to "show (onself) before a person, in or at a place" "completely prepared or . . . fit . . . for immediate action or use." *Id.* at 2:13-18. Therefore, VSS argues, "to 'report for work,' an employee must present himself at the place of work, completely prepared to . . . begin working." *Id.* at 2:18-19.

In this context, various dictionaries agree that the verb "report" means, at least, "to present onself." The Random House College Dictionary 1119 (Jess Stein ed., Random House, Inc. 1982) (1968) (defining "report" to mean, among other things, to "to present oneself duly, as at a place"); Webster's New World Dictionary, Third College Edition 1139 (Victoria Neufeldt ed., Simon & Schuster, Inc. 1988) (defining "report" to mean, among other things, "to present oneself or make one's presence known"); Merriam-Webster Online Dictionary, "Report," *available at* http://goo.gl/LvPLhl (last visited November 11, 2014) (defining "report" to mean, among other things, "to present oneself"). The verb "present," in turn, means "to come to show (oneself) before a person, in or at a place, etc." The Random House College Dictionary 1048 (Jess Stein ed., Random House, Inc. 1982); Dictionary.com, "Present," *available at* http://goo.gl/rjqfL3 (last visited November 11, 2014) (same); *see also* Oxford English Dictionary Online, "Present," *available at* http://goo.gl/8748rk (last visited November 11, 2014) ("To come forward into the presence of another or into a particular place, esp. in a formal manner; to introduce oneself formally or ceremonially; to appear, attend, turn up"). Viewed in context, then, the plain meaning of the word "report" supports VSS's interpretation – that a person "reports to work" by physically showing up at the place ready to work. Indeed, this is consistent with the most common uses of the term. For example, a reasonable person instructed to "report for duty" as a juror or servicemember would know that he or she is supposed to physically show up, not simply call and indicate an ability to show up.[3]

---

[2]Plaintiffs consistently state that employees are required to call in "immediately" before a call-in shift. This is an exaggeration. The FAC states that Plaintiffs are required to call in two hours before a call-in shift. FAC ¶ 46.

[3]*See, e.g.,* The Superior Court of California, County of Los Angeles, Jury Q&A/Jury Basics, *available at* http://goo.gl/UhhIiD (last visited November 11, 2014) ("If you are asked to report for service and are not selected on any case on the day you are asked to report, your term of service is complete"); *see also, e.g., Feliciano v. Alpha Sector, Inc.*, No. 00-CV-9309-AGS, 2002 U.S. Dist. LEXIS 12631, at *36 (S.D.N.Y. July 11, 2002) ("[D]efendants provide sworn testimony alleging that Feliciano was 'no call/no show' on two occasions prior to her suspension (i.e.,

### B. *Legislative History (and Rules of Construction)*

Though the plain meaning supports VSS's argument, the parties' briefing amply illustrates that the phrase "report to work" is susceptible to multiple reasonable interpretations. Thus, the Court looks to other interpretative aids to discern the intent of the drafters. *See Martinez*, 49 Cal.4th at 51.

While the current version of Wage Order 7-2001 only uses the phrase "report for work" in §§ 5(A)-(B), an earlier version of Wage Order 7, adopted in June 1947, used the phrase as follows: "No woman employee shall be required to *report for work* or be dismissed from work between the hours of 10 p.m. and 6 a.m. *unless suitable transportation is available*." Docket No. 27-1, Ex. D, IWC Wage Order No. 7 R (effective June 1, 1947) [at 91 § 3(c)]. Consistent with the phrase's plain meaning, this use of "report for work" clearly contemplates physically showing up at a place of work – otherwise the language about "suitable transportation" would be irrelevant. *See* Docket No. 27-1, Ex. F, Minutes of IWC Meeting (Apr. 5, 1942) [at 34 § 14] (findings of purpose for this provision, stating: "[It] is necessary to afford some protection to women who are required to report for work or to leave work after 10 p.m., and the Commission [thus] requires that some method of providing transportation"); *see also Wells*, 39 Cal.4th at 1207 (rejecting interpretation that would "deprive [statutory] phrase of significance" as "contrary to the principle of statutory construction that interpretations which render any part of a statute superfluous are to be avoided") (citations omitted).

That same 1947 Wage Order also included language almost identical to the current reporting-time provisions, stating:

> Each day an employee is *required to report for work and does report*, but is not put to work or is furnished less than half the usual day's work, said employee shall be paid for half the usual day's work at the employee's regular rate of pay, which shall be not less than the minimum wage herein provided.

Docket No. 27-1, Ex. D, IWC Wage Order 7 R [at 91 § 4(b)].[4] A basic rule of statutory construction states that identical words or phrases used in the same statute bear the same meaning, particularly where they appear in close proximity. *People v. Cornett*, 53 Cal.4th 1261, 1269 (2012) ("[I]dentical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or an analogous subject matter") (citations omitted); *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal.4th 192, 201 (2006) ("[I]dentical statutory language should be interpreted the same way . . . when the statutes in question cover the same or an analogous subject matter) (citations omitted); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (explaining that it is a "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning") (quotations omitted); *C.I.R. v. Lundy*, 516 U.S. 235, 250 (1996) (explaining that "close proximity" in a statute "presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning") (citations and quotations omitted). In the 1947 Wage Order,

---

failing to either *report for duty or call* four hours in advance to inform management") (emphasis added).

[4]The "suitable transportation" provision was removed from the Wage Order in 1977. *See* Docket No. 27-1, Tr. of IWC Public Meeting (Apr. 25, 1977) [at 22:15-23:6].

the two uses of "report for work" appear in sequential sections. The legislative history therefore strongly suggests that, at least in 1947, the phrase "report to work" meant physically showing up.

Nothing in the legislative history indicates that the IWC ever altered this meaning. Indeed, the phrase "[e]ach day an employee is required to report for work and does report" has remained unchanged throughout later versions of the Wage Order. This consistency strongly suggests that the IWC intended the phrase "report for work" to have the same meaning as in prior orders. *E.g.*, Docket No. 27-1, Ex. C, Tr. of Public Meeting to Adopt Revised Wage Orders (Sept. 7, 1979) [at 56:5-8] ("The Commission received no compelling evidence, and concluded there was no rationale to warrant [changing] the provisions of [the reporting-time provisions], which date back to 1942"). This suggestion is strengthened even further by the IWC Secretary's comments during a 1977 public meeting. In discussing proposed changes to the reporting-time provisions, the Secretary explained the IWC's decision, to leave the language largely unchanged, as follows:

> Requested language, that employees be required to be fit to work and to report on time, was not included because these requirements are implicit in the present wording.

Docket No. 27-1, Tr. of IWC Public Meeting (Apr. 25, 1977) [at 30:12-15]. This legislative history is entirely consistent with the Court's earlier plain-meaning interpretation and essentially ends the discussion. The ordinary meaning of the phrase "report for work" is to actually, physically show up. The legislative history indicates that the IWC used the phrase in this sense. While both parties argue at length about whether requiring reporting-time pay for call-in shifts would be consistent with the purposes of the reporting-time provisions, the Court does not find those arguments necessary or persuasive given the plain meaning and legislative history.[5] The fundamental task in interpreting Wage Orders is ascertaining the drafters' intent, not drawing up interpretations that promote the

---

[5] The legislative history indicates that the IWC had two goals in mind when drafting the reporting-time provisions. First, where an employee is scheduled for work, presents him or herself to work a scheduled shift, but is not furnished work, reporting-time payments seek to compensate for lost anticipated wages and expenses incurred in reporting to work. Second, reporting-time payments are designed to incentivize proper scheduling and notice. *See* Docket No. 26-3, 2002 DLSE Operations and Procedures Manual (2002) § 45.1.2.1 ("The reporting time premium requirement is designed to discourage employers from having employees report unless there is work available at the time of the reporting and is further designed to reimburse employees for expenses incurred in such situations"); *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1146 (2011) ("The DLSE states the primary purpose of the reporting time pay regulation 'is to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer'") (quoting 1989 DLSE Operations and Procedures Manual (1989) § 10.88); Docket No. 27-1, Ex. G [at 89 § (5)], Division of Industrial Welfare Enforcement Manual ("The primary purpose of this provision is to guarantee at least partial compensation for employees who expect to work a specified number of hours and who are deprived of that amount by the employer"); Docket No. 27-1, Ex. C [at 57:1-6], Tr. of Public Meeting to Adopt Revised Wage Orders (Sept. 7, 1979) ("The requirement for reporting time pay historically has been included in the Commission's orders on the basis that it is necessary to employees' welfare that they be notified in advance when changes in their starting time must be made. It has deemed a maximum of four hours' pay adequate to encourage proper notice and scheduling."); Docket No. 26-2, Notes of Secretary for the IWC, Wage Board for Order 5, at 17 (Jan. 10-11, 1967) ("[Supervisor] informed the board the intent of the Commission was to insure that the employee received the minimum amount of pay to reimburse her for the cost of getting to work").

Court's view of good policy. Given the plain meaning of the phrase and legislative history, the Court would find that the phrase "report for work" means to actually, physically show up at the workplace.

Plaintiffs' second cause of action – for failure to make reporting-time payments for call-in shifts – seeks reporting-time payments for times when Plaintiffs were told *not* to "report for work," and did *not* "report for work." This cause of action would be DISMISSED WITH PREJUDICE.

## III. Conclusion

The Court agrees with Plaintiffs, to an extent. VSS's call-in scheduling policy is somewhat unfriendly to employees and disrespects their time. But the Wage Order's reporting-time provisions do not provide a remedy.[6] Plaintiffs' second claim would be DISMISSED WITH PREJUDICE. Plaintiffs shall file a Second Amended Complaint within a week from when this Order appears on the docket.

---

[6] It may make it harder to attract quality employees, result in high turnover, and anger employees who work for the company (who may then sue VSS), but VSS's is entitled to elect those consequences if it chooses.